**HUSBAND D., Petitioner,**

v.

**WIFE D., Respondent.**

Family Court of Delaware,
New Castle County.

Submitted May 20, 1977.
Decided June 7, 1977.

J. Dallas Winslow, Wilmington, for petitioner.

Kenneth F. Carmine, Wilmington, for respondent.

## OPINION

WAKEFIELD, Judge.

This is the Court's decision concerning the contested divorce sought by Husband.

The petition alleges misconduct "in that Respondent has been habitually drunk for a period in excess of two years from [sic] the date of the filing of this petition." The Court treats this as an allegation that Respondent was guilty of "habitual intemperance" which was "so destructive of the marriage relation that petitioner cannot reasonably be expected to continue in that relation" within the meaning of 13 *Del.C.* § 1503(5).

Mr. D. is presently 62 years of age and Mrs. D., 46. They were married in 1969 and lived together until they separated in July of 1976. Prior to and for a short period after their marriage, Petitioner worked full time. He went on disability about six months after the marriage and has worked only sporadically at odd jobs ever since. They both drank before and all during the marriage. Respondent did not drink as much prior to marriage and, according to Petitioner, she began to drink more heavily as time went on. All Respondent ever drank was beer, while Petitioner himself drank both beer and hard liquor in considerable quantity. He apparently handled alcohol better than she did. Petitioner stated that Respondent would go to the liquor store at 9:00 a. m. every morning, purchase beer and commence to drink throughout the day until bedtime. He admitted that he often drank with her but not all day and not every day. He testified that their only outside entertainment together was attendance at taprooms. She did attend a convention with him one time, got drunk, and embarrassed him. Petitioner admitted, however, that Respondent took good care of him and the house, cooked the meals, and stated, "I never wanted for anything."

The break-up occurred in July of 1976 when Petitioner arrived home from a convention to find his wife at the door in her underwear in an intoxicated condition. She called him "every name in the book" and he took his things and left. He returned for a couple of days around Christmas, when Respondent's brother was expected to be in Delaware. He did this in order to save her embarrassment, since the family did not

know of the separation. Respondent had to be taken to the hospital because of alcohol and undernourishment on December 27 after both of them had "partied" for a couple of days. This was the third such hospitalization. Respondent, apparently, has maintained complete sobriety since but, despite this, there is no possibility of reconciliation. Respondent herself agreed that their relationship deteriorated over the last couple of years preceding the separation. She believes that Petitioner was just as much affected by alcohol as she was, but that he constantly complained about *her* problem to divert attention from *his*.

The Court concludes from the evidence that both parties were alcoholics—i. e., that both had acquired "such fixed, irresistible custom of frequent indulgence in intoxicating liquor with consequent drunkenness as to evidence a confirmed habit and inability to control the appetite for intoxicants." *Lecates v. Lecates*, Del.Super., 190 A. 294, 296 (1937). The difference in their drinking habits was one of degree only.

Respondent asserts that the divorce should be denied because (a) the parties drank together frequently and heavily before marriage and, hence, the situation was known to Petitioner at the time they were married, and (b) the fault must be so serious as to make it impossible for the other to endure. In addition, although not pleaded or argued by Respondent, the question of possible recrimination, condonation, or connivance is also present.

In addressing the last-mentioned issue, the opinion of then Superior Court Judge Herrmann in *Muir v. Muir*, Del.Super., 86 A.2d 857 (1952) is pertinent since the facts are somewhat similar. In that case, the court found that the defendant had been guilty of habitual drunkenness for a period of two years and held that the defense of connivance was available in habitual drunkenness cases "if it is found that the plaintiff 'procured or connived at the offense charged.'" However, the court rejected the defendant's contention that plaintiff was guilty of connivance because plaintiff himself made liquor available to her and

drank with her himself, since he did not do so with the corrupt intent that she should become an habitual drunkard as defined in *Lecates, supra*. The court held:

"Undoubtedly, the plaintiff's actions resulted in the presentation of temptation to the defendant. Unquestionably, he would have been more faithful to his marriage vows had he taken precautions to protect the defendant against her own weakness. As a matter of law, however, I do not believe that the plaintiff was obliged to forego his own proper and ordinary recreation at the risk of being charged with the corrupt intent to make his wife an habitual drunkard. It is concluded, therefore, that the evidence does not establish connivance by the plaintiff."

On the issue of condonation, the court in *Muir* held that the defense is not available in cases of habitual drunkenness, since that is a "continuing" cause of divorce.

While the defenses of condonation or connivance may not be available to Respondent in this case under the doctrine of *Muir*, there are two areas of distinction between that case and this—one of fact and the other of law.

In *Muir*, there was no finding that the plaintiff was himself an habitual drunkard or even had a serious drinking habit. Thus the court there did not have to deal with the question which the Court deems present in this case—whether a plaintiff who himself is guilty of fault may obtain a divorce from a spouse guilty of the same (or nearly the same) fault.

The second distinction is one of law. At the time of *Muir*, the law provided simply that "The causes for divorce from the bonds of matrimony shall be . . . (6) Habitual drunkenness for two years," whereas the present law permits the granting of a divorce for conduct "so destructive of the marriage relation that petitioner cannot reasonably be expected to continue in that relation; and . . . includes, as examples, . . . habitual intemperance." 13 *Del.C.* § 1503(5) and § 1505(b).

■ There are several possible legal theories upon which such a defense may be premised—clean hands, recrimination or failure to be the injured and innocent party. Under the law as it existed prior to June 4, 1974, it would appear that recrimination could be used only as a defense to adultery. See 13 *Del.C.* § 1523 and § 1524 (1974 ed.). When the new divorce law was first enacted in 1974, the defenses of recrimination, etc. were abolished, but effective March 29, 1976, 13 *Del.C.* § 1505 was again amended to insert the following language:

"(c) Previously existing defenses to divorce of condonation, connivance, recrimination, insanity and lapse of time are preserved but only with respect to marriages characterized under subsection (b)(2) of this section."

Subsection (b)(2) of § 1505 authorizes divorce based upon misconduct. It is apparent that the legislature, by using the words "previously existing defenses," intended to reinstate those defenses as they existed prior to 1974, and under this interpretation recrimination would not be a defense, since under the prior law it was a defense only in adultery cases. The Court holds, therefore, that recrimination is not a defense available in this proceeding under the present law.

■ "Clean hands" or the absence of material fault by the petitioner has been applied in divorce cases in many states. See 1 Nelson, *Divorce and Annulment*, 2d ed. § 10.02 pp. 361–363. The doctrine of "clean hands" is actually an equitable defense and usually not applicable in divorce proceedings except where, by statute, such proceedings are specifically designated as equitable in nature. See Nelson, *supra*, § 10.02. Hence "clean hands" is not technically available as an affirmative defense in this jurisdiction, since our divorce law was originally vested in the Superior Court rather than the Court of Chancery. The Court need not pass upon the availability of "clean hands" as a defense, however, since there is another similar, analogous principle which applies.

The concept of divorce based on fault of the respondent has its correlative assumption that only an injured and innocent party may obtain a divorce. As stated in Nelson, *supra*, § 2.05 p. 25:

"As a general proposition, to obtain a divorce one must be the 'injured and innocent' party. This requirement is sometimes imposed by statute, but seems to be regarded as inherent in the nature of the proceedings and within the legislative intent even when not explicitly stated."

And at p. 26:

"This rule is one apart from the doctrine of recrimination, which goes farther and requires, for an absolute defense by way of recrimination, a counter-showing of existence of ground for divorce against the party seeking it. The same principle underlies both, but recrimination, properly speaking, is an affirmative defense, while the 'injured and innocent' party requirement may be, and commonly is, invoked by the court in uncontested cases and whenever it sees fit to do so, irrespective of defense."

While the Delaware statute does not specifically require the petitioner to be an "injured and innocent party," some of the Delaware cases do use similar terminology. See, for example, *Woodall v. Woodall*, Del. Super., 125 A.2d 504 (1956) where the court denied a divorce on grounds of desertion when plaintiff herself refused to consummate the marriage and refused to set up housekeeping with respondent away from petitioner's mother's home. There the court held:

"Plaintiff, nevertheless, maintains she is entitled to a decree. To the contrary, he whose conduct itself amounts to grounds for divorce and which causes the other spouse to leave the marriage home is hardly in the position to maintain an action for wilful desertion . . . ."

The court in *Woodall* quoted with approval from Nelson, *supra*, § 4.16 p. 102, in part, as follows:

"Therefore, if the applicant by his conduct, *whether or not it would independently be ground for divorce*, brought about a situation so unpleasant or intolerable that the opposite spouse could not be

expected to continue further cohabitation, the latter's cessation of cohabitation may be regarded as 'justified' and the applicant be denied a divorce because the fault was his and he was not an injured and innocent party. [Furthermore, it is the rule in most states *that if the parties are equally at fault* in bringing about the separation, neither can successfully accuse the other of desertion.]" [Emphasis added.]

■ The Court holds that the foregoing principles apply with like force and effect to a divorce on grounds of habitual intemperance, and that Petitioner in this case is not an "injured and innocent" party. While he is not solely at fault for causing the marital break-up, his own drinking habits were equal to or nearly as great as hers.

■ Even if this were not the case, the Court would deny the petition on another ground—that Respondent's conduct was not "so destructive of the marriage relation that petitioner cannot reasonably be expected to continue in that relation" within the meaning of 13 *Del.C.* § 1503. As stated previously, this language is new to the present divorce law, and the Court considers it to be a substantive change consistent with the legislature's desire to encourage "no fault" divorces and to discourage divorces based upon fault, except in the most egregious cases where one party commits acts so serious as to render further cohabitation by the injured and innocent party unreasonable. Under this theory, for example, a single act of adultery may no longer be ground for divorce unless it can also be shown that such act is so destructive of the marriage relationship as to render further cohabitation unreasonable.

In any event, under the facts of this case, the Court does not believe that the alcoholic tendencies of the wife were so severe as to render further cohabitation by the husband unreasonable. Except for one or two instances, he did not recite any misbehavior by the wife while drinking and certainly did not show that his life was seriously and adversely affected. Indeed, he stated that she performed her wifely household duties very well—cooked, cleaned, did the laundry, etc. Although their life together may not have been exciting and they may have been incompatible of temperament, the Court cannot find that Petitioner's drinking was the sole cause of the marital break-up.

Decree of divorce denied.